# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CRAIG K. DELIGDISH,**

        **Plaintiff,**

**v.**                                                 **Case No: 6:23-cv-417-DCI**

**DAVID BENDER,**

        **Defendant.**

_____

## ORDER

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **Defendant's Motion to Dismiss (Doc. 31)** |
| **FILED:** | **May 8, 2023** |

**THEREON** it is **ORDERED** that the motion is **GRANTED in part** and **DENIED in part**.

## I.    Procedural Background

Craig K. Deligdish (Plaintiff) initiated this case against David Bender (Defendant) in state court and Defendant removed it to this Court.  Doc. 1.  Upon the parties' consent, the case was reassigned to the undersigned.  Doc. 25.  With leave of Court, Plaintiff filed a Second Amended Complaint against Defendant alleging four counts: Tortious Interference with Business Relationships (Count I); Defamation, Defamation Per Se, and Defamation by Implication (Count II); Trade Libel (Count III); and Fraud (Count IV).  Doc. 28 (the Second Amended Complaint).

Pending before the Court is Defendant's Motion to Dismiss the Second Amended Complaint.  Doc. 31 (the Motion).  Plaintiff has filed a Response (Doc. 37, the Response) and Defendant has filed a Notice of Supplemental Authority.  Doc. 39.  The matter is ripe for review and for the reasons stated herein, the Motion is due to be granted in part to the extent that Count IV is dismissed.[1]

## II.     Allegations in the Second Amended Complaint

Plaintiff seeks damages and injunctive relief because Defendant allegedly made false and defamatory statements about Plaintiff and published them anonymously on the internet with the intent to injure Plaintiff's reputation and interfere with Plaintiff's business relationships.  Doc. 28 at 1.[2]  Plaintiff is a physician and the president and chief medical officer of Omni Healthcare, Inc (Omni)—a multi-specialty physician group practice with practicing physicians operating independent of Plaintiff.  *Id*. at 1, 4.  Defendant registered, created, and continually maintains the internet domain DeligdishWatch.com (the Website).  *Id*. at 2.  Defendant's identity is "concealed by a privacy service purchased by Defendant which operates out of Reykjavik, Iceland."  *Id*. at 4.  Defendant designed and published the Website, and in January and February 2023, Defendant updated and included new content.  *Id*.  Attached to the Second Amended Complaint is a copy of the original Website prior to its "updates" and a copy of the Website in its current form.  *Id*. at 4-5.  Defendant revised the Website to remove false statements after receiving the original complaint.  *Id*. at 11.

---

[1] The Court granted Defendant's unopposed request to stay discovery pending an entry of an order on the Motion to Dismiss.  Doc. 38.

[2] For the purposes of this Order, the Court will assume the truth of Plaintiff's allegations in the Second Amended Complaint.

The Second Amended Complaint contains about five pages of allegedly defamatory statements from the Website, which "calls attention to 'hundreds of separate cases filed in state, federal, and small claims courts between 2005 and the present' in which OMNI was a party." Doc. 28 at 5-10.  "The Website identifies Plaintiff by name and includes a recognizable photograph of Plaintiff which was reproduced, repurposed, and published by Defendant on the Website without Plaintiff's authorization or consent." *Id*. at 5.   "The Website falsely alleges that Plaintiff engages in various forms of unprofessional, unethical, immoral, and illegal activities, including, but not limited to falsification ('creates false identities'), fraud ('refuses to pay bills/violates contracts'), other criminal conduct ('engages in predatory billing practices against patients'), vexatious litigation ('sues his own lawyers,' 'frequently sues his own physician employees,' and 'sues deceased cancer patients'), and 'other troubling/miscellaneous behaviors.'"   *Id*.   Through inaccurate reporting of facts and the omission of facts, the Website creates a defamatory implication that Plaintiff has direct involvement in every lawsuit or claim involving Omni.  *Id*. at 10-11.  Specifically, "[t]he defamatory implication of the Website is that Plaintiff is directly involved in and personally responsible for every claim or lawsuit that has been brought by or against Omni, and that adverse inference which can be drawn from each claim or lawsuit is true." *Id*. at 12.  Further, the Website is designed to and displays prominently in keyword and image search results for his name.  *Id*. at 11.

As alleged, Defendant authorized and published the Website without a factual basis for the assertions and with the intent to damage Plaintiff's reputation.  *Id*. at 11-12.  Defendant admitted that he published the Website because he was upset with Plaintiff and Omni over sums he claimed were contractually owed and Defendant intended to harm Plaintiff and Omni.  *Id*. at 11-12. Defendant "acted with malice in writing and publishing the Website, knowing the Statements and

the intended implications created thereby were false or acting with reckless disregard as to falsity." *Id*. at 17. At a minimum, Defendant's "fault amounts to negligence." *Id*.

As to publishing, Defendant paid a third-party to publish the Website using Defendant's credit card. *Id*. at 12-13. Defendant has admitted to being involved in the creation, publication, and maintenance of the Website, and discovery revealed that Defendant used Plaintiff's name and Plaintiff's son-in-law's name as "registrants or other individuals related to the Website to make it appear as though Plaintiff and/or his son-in-law created, published and/or maintained the Website." *Id*. at 13. Despite notice to Defendant, Defendant has failed or refused to take down the Website. *Id*. at 14. Plaintiff has "incurred considerable expense attempting to mitigate the damage caused by the Website, and Plaintiff has been substantially damaged, both economically and otherwise, by the Website." *Id*. at 12.

### III.    Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant now moves to dismiss the Second Amended Complaint for failure to state a claim. Doc. 31.

In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Further,

"conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## IV.   Discussion

### A.  Defamation, Defamation *Per Se*, Defamation by Implication (Count II)

The primary thrust of Defendant's Motion is that the Court should dismiss Count II, the defamation claim. Doc. 31 at 4-21. In support of dismissal, Defendant asserts that: (1) the statements on the Website are protected by the fair report privilege; (2) Plaintiff did comply with a condition precedent to filing a defamation claim, i.e., presuit notice pursuant Florida statute; and (3) the statements on the Website are non-actionable pure opinion or are otherwise reasonable and supported by court records. *Id*. The Court will consider these arguments, and Plaintiff's responses to them, in turn.

Defamation is a state cause of action. Under Florida law, "[d]efamation has the following five elements: '(1) publication; (2) falsity; (3) [the] actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) [the] statement must be defamatory.'" *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008). A court "may not hold a defendant liable for defaming a public figure about a matter of public concern unless he is shown to have acted with actual malice." *Jacoby v. CNN, Inc.*, 2021 WL 5858569, at *3 (11th Cir. Dec. 10, 2021) (citing *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020)).

Defamation by implication arises in instances in which "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts, [the defendants] may be held responsible for the defamatory implication unless it qualifies as an opinion, even though the particular facts are correct." *Id.* at 1108 (internal quotation marks omitted).

"Under Florida law, '[f]alse statements which suggest that someone has committed a dishonest or illegal act are defamatory *per se*.'" *Colbert v. Anheuser-Busch, Inc.*, (M.D. Fla. Mar. 5, 2013) (quoting *Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1541-42 (M.D. Fla. 1993)). "'*Per se* defamatory statements are 'so obviously defamatory' and damaging to [one's] reputation that they 'give[] rise to an absolute presumption of both malice and damage.'" *Maletta v. Woodle*, 2021 WL 1894023, at * at 3 (M.D. Fla. May 11, 2021) (quoting *Bernath v. Seavey*, 2017 WL 3268481, at *7 (M.D. Fla. May 18, 2017)). Defendant argues that Plaintiff has failed to state a claim pursuant to Rule 12(b)(6). Whether a statement is defamatory is a question of law. *See Turner v. Wells*, 879 F.3d 1254, 1262-63 (11th Cir. 2018).

1. Fair Report Privilege

Defendant asserts that the fair report privilege protects the "challenged statements." Doc. 31 at 4. In Florida, the "fair report privilege grants journalists and news media a qualified privilege to report on information received from government officials or to publish the contents of official documents, as long as the account is 'reasonably accurate and fair.' To qualify as 'reasonably accurate and fair,' the publication must be a substantially correct account of information contained in public records or derived from a government source.'" *Grayson v. No Labels*, 2021 WL 2869870, at *3 (M.D. Fla. Jan. 26, 2021) (quoting, *Larreal v. Telemundo of Fla., LLC*, 489 F.Supp. 3d 1309 (S.D. Fla. 2020)).

The Court is not convinced that Defendant is now entitled to dismissal of the defamation claim based on an assertion of the fair report privilege.[3]  At this stage of the proceedings, the Court must take as true the allegation in the Second Amended Complaint, and there is no allegation in that pleading that Defendant is a member of the media or a journalist.  To the contrary, Plaintiff alleges that "Defendant is not a member of the media and does not usually or regularly engage in the publication of written material for public review or on public forums."  Doc. 28 at 2.  Accordingly, dismissal is not appropriate at this juncture.  *See Grayson*, 2021 WL 2869870, at *3 ("Defendants' argument stumbles at the first hurdle:  there are no allegations that they are news media entities and/or journalists as required for the application of the privilege, and Defendants themselves do not argue as such.").

That said, Defendant also makes the assertion that the fair report privilege applies here given the allegations in the Second Amended Complaint, arguing that the privilege extends beyond traditional media members or journalists to "individuals like Defendant who operate independent websites."  Doc. 31 at 5.  In support, Defendant cites two Florida cases addressing who falls into the category of "media defendant" in another context—i.e., for the purpose of determining who must receive presuit notice of a defamation claim pursuant to Florida Statutes section 770.01 (Notice Condition Precedent to Action or Prosecution for Libel or Slander). [4]  *Id*. (citing *Comins*

---

[3] To the extent Plaintiff argues that the Court should not consider the fair report privilege at the motion to dismiss stage (*See* Doc. 37 at 8), the application of the privilege to a given set of facts or allegations is a question of law that may appropriately be considered at this stage.  *See Larreal*, 489 F. Supp. 3d at 1319; *Grayson*, 2021 WL 2869870, at *9 n.4.

[4] Florida Statutes section 770.01 requires that:

> Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying

*v. Vanvoorhis*, 135 So.3d 545, 560 (Fla. 5th DCA 2014) and *Zelinka v. Americare Healthscan*, 763 So.2d 1173, 1175 (Fla. 4th DCA 2000)).

The *Zelinka* court found that a defendant who posted defamatory statements on an internet message board was not a "media defendant" for purposes of section 770.01 because he was "a private individual who merely made statements on a web site owned and maintained someone else." *Id*. at 1175. The court explained that "[e]very Florida court that has considered the question has concluded that the presuit notice requirement applies only to 'media defendants,' not private individuals." *Id*. In the parenthetical provided to the Court, Defendant apparently seizes upon dicta from that case: "It may well be that someone who maintains a website and regularly publishes internet 'magazines' on that site might be considered a 'media defendant' who is entitled to notice." *Id*.[5] But the *Zelinka* court neither mentioned nor applied the qualified fair report privilege. And to the extent Defendant implies that the *Zelinka* court's dictum related to section 770.01 should control the application of the fair report privilege in this case, that position is without support from *Zelinka* itself, and the Court disagrees.

Defendant's reliance on *Comins* is also misplaced and unpersuasive. Defendant, in another parenthetical, asserts that *Comins* "appl[ied] [the] privilege to [a] psychology student who blogged on issues of public concern." Doc. 31 at 5. Again, *Comins* was not a fair report privilege case and there is no indication that the court applied that privilege. Even if the section 770.01 analysis can

---

the article or broadcast and the statements therein which he or she alleges to be false and defamatory.

Fla. Stat. § 770.01.

[5] *Zelinka* also stated that "[e]ven if an internet bulletin board was a 'medium' within the scope of the statute, no precedent would allow this court to extend the statutory notice requirement to a private individual who merely posts a message on the board." *Id*. at 1175.

be extended to the fair report privilege context, the Court is not convinced that such an extension should occur here.  Indeed, the *Comins* court specified that, "[t]he presuit notice requirement of section 770.01 applies to allegedly defamatory statements made in such a public medium the *purpose* of which is the free dissemination of news or analytical comment on matters of public concern, as suggested in *Ross*."  *Comins*, 135 So.3d at 559 (emphasis added).  The court went on: "We are not prepared to say that all blogs and all bloggers would qualify for the protection of section 770.01[], but we conclude that [the defendant's] blog, *at issue here*, is within the ambit of the statute's protection as an alternative medium of news and public comment."  *Comins*, 135 So.3d at 559 (emphasis added).

Here, Plaintiff alleges in the Second Amended Complaint that Defendant is not a member of the media and that Defendant set up the Website to ruin Plaintiff's reputation.  Doc. 28 at 1, 17.  Plaintiff also alleges that Defendant admitted that he published the Website because he was upset with Plaintiff and Omni over money allegedly owed under a contract and, in publishing the Website, Defendant intended to harm Plaintiff and Omni.  *Id*. at 12.  Assuming the fair report privilege may apply to some bloggers, the facts of this case as alleged—and taken as true—would not qualify Defendant for protection.  *See San Juan Prods. v. River Pools & Spas, Inc.*, 2023 WL 1994087, at *3 (M.D. Fla. Feb. 14, 2023) (stating that some Florida courts have recognized a narrow exception for "so called 'blogs'" that are engaged in the dissemination of news and information and, therefore, qualify as "media defendants" within the ambit of section 770.01, but finding that the defendant's blog was operated as a business venture to help with pool business and "clearly not 'operated to further the free dissemination of information or disinterested and neutral commentary or editorializing as to matters of public interest'").

Finally, even if Defendant falls within the definition of news media or is a journalist who would obtain some protection under the fair report privilege, Defendant's request for dismissal based on the privilege fails because the defamation claims are not entirely based on information from government officials or contained in official government documents. *See Grayson*, 2021 WL 2869870, at *3 (finding that the defamation claim was not "wholly premised" on information from government documents and, thus, the fair report privilege was not a basis for dismissal). Some of the purported content does include what appears to be excerpts from court documents or links to court records. But Plaintiff's allegations go beyond those links and images. Indeed, Plaintiff states in the Response that the publicly available court documents published on the Website are not the subject of the defamation claim. Though Plaintiff's characterization of the pleading in a response is not controlling, the Court agrees that Plaintiff's claim in Count II is based on Defendant's alleged statements regarding Plaintiff's reputation, occupation, and alleged misconduct; Count II is not based simply on information from government documents.

Accordingly, the Court does not find at this juncture that Defendant is protected by the fair report privilege. Because the fair report privilege does not apply to Defendant, the Court will not consider Defendant's extensive argument that particular statements Defendant allegedly made are protected by the privilege. *See* Doc. 31 at 6-12.

2.   Presuit Notification

Defendant argues that Count II should be dismissed because Plaintiff failed to comply with the presuit notice requirement of section 770.01. In support, Defendant cites to a few cases for the general rule that Florida requires notification in writing as a prerequisite for a defamation claim and then offers a conclusory statement that a "[a]publication on a webpage is an 'other medium' protected by the condition precedent in § 770.01, Fla. Stat." Doc. 31 at 20-21. The statement does

nothing to assist the Court in deciding of whether presuit notification applies here.[6]  Consequently, the Court is not persuaded that the presuit notification requirement of section 770.01 applies to Defendant for the reasons discussed in the preceding section.   Namely, Defendant does not convince the Court—or provide persuasive authority for the proposition—that the Court should extend the presuit notification requirement of section 770.01 to an individual who is allegedly *not* a member of the media and who published a website because he was upset and for the purpose of harming someone's reputation.   Again, Florida courts have explained that the presuit notice requirement applies only to "media defendants" and not to private individuals.  *See Zelinka*, 763 So.2d 1173 at 1175.  And even assuming a website or blog is an "other medium" for purposes of section 770.01, Defendant has not persuaded the Court that Plaintiff had to provide presuit notice or make a request for a retraction given the allegations in the Second Amended Complaint, taken as true at this stage of the proceedings.

Finally, even if the statute did require Plaintiff to provide notice, it is not clear that Plaintiff failed to comply with section 770.01.  Indeed, Plaintiff alleges in the Second Amended Complaint that he "notified Defendant of the defamatory nature of the Website and requested that it be taken down and otherwise removed from the public domain, but Defendant has failed or refused to do so."  Doc. 28 at 14.  In the Motion, Defendant does not directly address the allegation that Plaintiff notified Defendant of the "defamatory nature" of the Website or requested that the information be

---

[6] Indeed, this section of Defendant's motion fails to comply with Local Rule 3.01(a)'s requirement that a motion contain a "legal memorandum supporting the request" for relief and, as such, is due to be denied alternatively for a violation of the Local Rule.

"taken down" or "removed." *See* Doc. 31 at 20. Instead, Defendant states that Plaintiff did not

include an allegation of a "retraction demand." *Id*. at 21.[7] The Court is not so sure.

Regardless, at this juncture, the Court finds that Defendant has not established that section

770.01 requires dismissal.

3. The Content of the Statements on the Website

Defendant argues that dismissal of Count II is also appropriate because the statements on

the Website are non-actionable pure opinion or are otherwise reasonable and supported by court

records. Doc. 31 at 13-19.

"Under Florida law, a defendant publishes a "pure opinion" when the defendant makes a

comment or opinion based on facts which are set forth in the publication or which are otherwise

known or available to the reader or listener as a member of the public." *Zimmerman v. Buttigieg*,

521 F.Supp. 3d 1197, 1213 (M.D. Fla. Feb. 23, 2021)(citing *From v. Tallahassee Democrat, Inc.*,

400 So.2d 52, 57 (Fla. Dist. Ct. App. 1981)). "[A] speaker cannot invoke a 'pure opinion' defense,

[however,] if the facts underlying the opinion are false or inaccurately presented." *Id*. (quoting

*Deeb v. Saati*, 778 F. App'x 683, 687-88 (11th Cir. 2019)). Courts also "distinguish between pure

expressions of opinion and mixed expressions." *Music with Mar, LLC v. Froggy's Friends*, 2020

WL 7768941, at *4 (M.D. Fla. Dec. 30, 2020) (quoting *Bassler v. George Weston Bakeries Distrib.*

*Inc.*, 2008 WL 4724434, at *3 (M.D. Fla. Oct. 24, 2008)). A mixed opinion is one "based upon

facts regarding a person or his conduct that are neither stated in the publication nor assumed to

exist by a party exposed to the communication." *Dershowitz v. CNN, Inc.*, 541 F. Supp. 3d 1354,

---

[7] In the Response, Plaintiff points to this allegation and argues that Defendant is not entitled to
dismissal, but Plaintiff does not appear to contend that he fully complied with section 770.01 in
seeking a retraction. *See* Doc. 37 at 9.

1361 (S.D. Fla. May 24, 2021) (quoting *LRX, Inc. v. Horizon Assocs. Joint Venture ex rel. Horizon-ANF, Inc.*, 842 So.2d 881, 885 (Fla. 4th DCA 2003)).

"Whether a statement is one of opinion, fact, or mixed opinion and fact is a question of law." *Music with Mar*, 2020 WL 7768941, at *4 (citing *Turner v. Wells*, 879 F. 3d 1254, 1262-63 (11th Cir. 2018)). The Court must also determine "whether an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts that justify the expressed opinion about the plaintiff or his conduct." *Id*.

Here, taking Plaintiff's allegations as true, the Court finds that the statements are not clearly all pure opinion as Defendant contends. While some of the statements appear to be opinion, Plaintiff alleges they are misleading or inaccurate because drop-down menus or links do not actually support Defendant's associated statements. Doc. 28 at 5-6. Plaintiff also alleges that Defendant's summation of the facts or outcome of cases Plaintiff was allegedly involved in are untrue and not reflected in the court filings Defendant relies upon in making the statements. *Id*. at 6-7, 9. Further, Plaintiff claims that Defendant attributes facts or litigation to Plaintiff individually when the cases involve Omni. *Id*. at 6-9. Thus, Defendant allegedly defames Plaintiff by implication. *Id*. at 11.

Based on these allegations along with the attached exhibits, the statements could qualify as mixed expression of opinion and fact. Defendant's statements seem to accuse Plaintiff of unprofessional and unethical activity and imply wrongdoing but are allegedly not based purely on fact as set forth on the Website. It does not appear that the Court has the complete context of the statements and links, and dismissal is inappropriate at this juncture. *See Zimmerman*, 521 F.Supp.3d at 1214 ("Because the Court must construe the statements in their totality, including the circumstances surrounding the publication, and must examine all the words used in the publication,

this issue is best determined on a motion for summary judgment.") (citing *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984)). "Given the context of the links, excerpts, and statements on the Website, the Court does not find as a matter of law that Defendant's use of "predatory" and "extensive and vexatious" litigation is protected opinion. Plaintiff states a plausible claim for defamation. Defendant may raise the argument at summary judgment, or a jury may find in Defendant's favor, but Plaintiff's claim may proceed.

Further, the Court is not persuaded that Defendant's statements are mere opinion because Defendant included a disclaimer on the Website. According to the Motion and the exhibit attached to the Second Amended Complaint, Defendant included a statement that: "The purpose of this site is not to defame the Florida-based physician and his company, but to provide easy access to publicly-available court documents and news reports regarding Dr. Deligdish/Omni's conduct and litigation." Docs. 28-2 at 1; 31 at 15.

The Court agrees with Defendant that it is appropriate to consider this language in determining if a statement is opinion, as the Court must consider all circumstances surrounding the statement. Even so, the Court is not convinced that Defendant's disclaimer on the website is sufficient to show as a matter of law that the challenged statements are pure opinion. *Dershowitz*, 541 F.Supp.3d at 1361 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications.")).[8]

---

[8] As a result, the Court rejects Defendant's other argument that the defamation claims are due to be dismissed and Defendant is entitled to fees and costs pursuant to Florida's Anti-SLAPP statute.

B.      **Tortious Interference, Trade Libel, and Fraud (Counts I, III, and IV)**

1.   Single Action Rule (Counts I, III, and VI)

Defendant argues that the Court should dismiss Counts I, III, and IV because the claims

are "mere attempts to recast defamation claims to avoid constitutional protections." Doc. 31 at 22.

Defendant states that, in Florida, a single publication gives rise to a single cause of action. *Id.*

(citing *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th

DCA 2002)).

Indeed, as one court in this Division explained:

"The single publication/single action rule ... does not permit multiple actions when
they arise from the same publication upon which a failed defamation claim is
based." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208
(Fla. 4th DCA 2002). In this context, "[w]hen claims are based on analogous
underlying facts and the causes of action are intended to compensate for the same
alleged harm, a plaintiff may not proceed on multiple counts for what is essentially
the same defamatory publication or event." *Klayman v. Judicial Watch, Inc.*, 22 F.
Supp. 3d 1240, 1256 (S.D. Fla. 2014), *aff'd*, No. 14-13855 (11th Cir. Feb. 17, 2015).
"The rule is designed to prevent plaintiffs from circumventing a valid defense to
defamation by recasting essentially the same facts into several causes of action all
meant to compensate for the same harm." *Callaway Land & Cattle Co.*, 831 So. 2d
at 208 (quotation omitted).

*San Juan*, 2023 WL 1994087, at *9. [9]  So, the single action rule may, in certain instances, prohibit

a plaintiff from bringing the type of claims alleged in Counts I, III, and IV when there is also a

defamation claim in the action.

---

Defendant contends that the defamation claims, "chill truthful speech" and are without merit. Doc.
31 at 27-28.  Whether Plaintiff's defamation claims are meritorious remains a question, but
Plaintiff has at least stated a claim for defamation.

[9] The *San Juan* court explains further:

Based on this rule, Florida courts regularly preclude tortious interference claims
that factually overlap defamation claims. For example, in *Tobinick v. Novella*, No.
9:14-cv-80781, 2015 U.S. Dist. LEXIS 8085, 2015 WL 328236 (S.D. Fla Jan. 23,

Here, Defendant's entire argument on this issue is a page of citations to case law and the unhelpful conclusion that Defendant is entitled to dismissal on the related, non-defamation claims.[10]  While Defendant asserts that "Plaintiff's claims are garden variety defamation claims,"

---

2015), which involved facts similar to this case, the plaintiffs asserted claims based on the defendant's publication of two articles on an internet website and filed a complaint alleging five separate counts: violations of the Lanham Act, 15 U.S.C. § 1125(a); unfair competition under 28 U.S.C. § 1338(b),trade libel, libel *per se*, and tortious interference. The *Tobinick* court found that the plaintiffs' tortious interference claim involved the same allegedly false and/or defamatory statements made in the two articles published by the defendant. Therefore, the tortious interference claim was dismissed based on the single action rule.

Similarly, in *Hill v. Allianz Life Ins. Co. of N. Am.*, No: 6:14-cv-950-Orl-41KRS, 2016 U.S. Dist. LEXIS 31101, 2016 WL 872936 (M.D. Fla. 2016), the court found that "Plaintiff's tortious interference claim is based on the same publication and underlying facts as his failed defamation claim. Plaintiff not only relies on the same conduct and alleged publication to support his claim, but his tortious interference claim explicitly incorporates the factual allegations of his defamation claim." As such, summary judgment was granted in the defendant's favor on a tortious interference claim based on the single publication/single action rule.

However, it should be noted that tortious interference claims are not precluded by the single publication/single action rule where they include conduct that is factually different from the defamation claim. *Geller v. Von Hagens*, No. 8:10-cv-1688-EAK-AEP, 2011 U.S. Dist. LEXIS 62435, 2011 WL 2434217, at *4 (M.D. Fla. June 13, 2011) (denying summary judgment on a tortious interference claim where the plaintiff's claim was based on conduct separate from the defamation claim); *Kamau v. Slate*, No. 4:11CV522-RH/CAS, 2012 U.S. Dist. LEXIS 158213, 2012 WL 5390001, at *7 (N.D. Fla. Oct.1, 2012), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 158211, 2012 WL 5389836 (N.D. Fla. Nov. 5, 2012) (tortious interference claim dismissed based on single publication/single action rule, but plaintiffs given leave to file amended complaint with tortious interference claim asserting conduct separate from defamation claim).

2023 WL 1994087, at *9.

[10] Indeed, this section of Defendant's motion fails to comply with Local Rule 3.01(a)'s requirement that a motion contain a "legal memorandum supporting the request" for relief and, as such, is due to be denied alternatively for a violation of the Local Rule.

- 16 -

there is no discussion of how the facts in Count II—the defamation claims—are the same or relate to the underlying allegations in Counts I, III, and IV.  This omission is a problem.

For example, a cursory review of Count IV shows that the fraud claim is based on allegations appear quite different from the defamation claim.  *See* Doc. 28 at 16-19, 20-23. Particularly, the defamation claim is premised on Defendant's alleged statements published on the Website, but the fraud count relates to Defendant's alleged use or attempted use of Plaintiff's identity without authorization to create and publish the Website.  Doc. 28 at 21.  In Count IV, Plaintiff alleges that Defendant fraudulently used Plaintiff's information to solicit, register, and maintain the Website "under the guise and false impression that Plaintiff himself had registered it in order to hide Defendant's involvement in the same." *Id*.  Since the allegations that support the two claims—Counts II and IV—do not appear to overlap and are separate and distinct, some explanation by Defendant is necessary to explain how the single action rule applies as Defendant contends.

As to Count I, even though courts seem to regularly preclude tortious interference claims under the single action rule, Plaintiff responds that the tortious interference claim here goes beyond the publication of defamatory statements via the Website and explains that the "distinction and difference" between the claims is subtle, but it exists.  Doc. 37 at 20.  But Plaintiff provides absolutely no argument concerning Count III, the trade libel claim, perhaps conceding the application of the single action rule to that claim.

Regardless, there remains a question as to whether the single action rule applies when a plaintiff's claim for defamation survives a motion to dismiss.  Specifically, "Florida courts have disagreed as to whether the single action rule applies only when the non-defamation torts are associated with a *failed* defamation claim." *Markle v. Markle*, 2023 WL 2711341, at *13 (M.D.

Fla. Mar. 30, 2023) (M.D. Fla. Mar. 30, 2023) (emphasis in the original).  Since the Court has determined that Plaintiff's defamation claims will go forward, it is unclear if the single action rule dictates dismissal of any overlapping claims.  Without sufficient briefing of this issue by the parties, the Court will not sua sponte embark on the journey to decide which authority to follow.  As a result, the Court will not, at this juncture, apply the single action rules to dismiss any of the remaining claims.

   2.   <u>Sufficiency of the Allegations (Count I)</u>

Defendant also argues that the Court should dismiss the tortious interference claim because the allegations supporting it are insufficient.  Doc. 31 at 24.

To establish tortious interference with a business relationship in Florida, a plaintiff must demonstrate: "(1) the existence of a business relationship, (2) the defendant's knowledge of that relationship, (3) an intentional and unjustified interference with the relationship, and (4) injury resulting from the breach of the relationship."  *Vibo Corp. v. Us Flue-Cured Tobacco Growers*, 762 F. App'x 703, 706 (11th Cir. 2019) (quoting *Dunn v. Airline Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999)).

Defendant argues that "Plaintiff has failed to allege with any detail the established business relationships that have been hindered by Defendant's actions, nor any parties with whom he had an 'understanding' that would have been completed had Defendant not posted the Website."  Doc. 31 at 24-25.  Defendant argues that under Florida law, there is no cause of action for "interference with 'a business's relationship to the community at large.'"  *Id*. at 24, citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994).  Defendant asserts that Plaintiff's conclusory allegation concerning "existing patients and prospective patients" is not sufficient under the law.  *Id*. at 25.

The Court does not agree.  Plaintiff alleges in the Second Amended Complaint that Defendant intentionally and improperly interfered with Plaintiff's existing and prospective business relationships, "namely its existing patients and prospective patients that have been deterred from engaging Plaintiff for services as a result, either whole or in part, of the Website." Doc. 28 at14.  Plaintiff adds that "[a] business with which Defendant was employed or otherwise affiliated had a contractual relationship with OMNI prior to Defendant's publication of the Website and, as a result, Defendant was aware and intended that publishing the Website would harm Plaintiff's and Omni's existing relationships with patients and potential relationships with prospective patients."  *Id*.  Plaintiff also claims that "Defendant induced or otherwise caused existing patients of Plaintiff to discontinue obtaining medical services from him and further caused prospective patients to seek medical services from other providers who were not the subject of defamatory websites."  *Id*. at 15.  Plaintiff alleges that Defendant hindered or caused termination of existing and prospective relationships, and that resulted in harm.  *Id*.

So, Plaintiff alleged more than just relationships with the "community at large."  The pleading reflects a claim that Defendant's alleged conduct interfered with identifiable existing relationships with patients.  The Court is unaware of any authority—and Defendant does not cite to any—that stands for the proposition that a plaintiff must "detail the established business relationships" in the pleading.  *See Cain & Bultman. v. Evolutions Flooring, Inc.*, 2022 WL 19298813, at *3 (M.D. Fla. Dec. 15, 2022), *report and recommendation adopted by* 2023 WL 2681866) (M.D. Fla. Jan. 31, 2023) (finding that although the plaintiff did not name specific customers, it adequately alleged ongoing business relationships that could be identified in discovery and did not make vague assertions that only identify the community at large) (citing *Burge v. Ferguson*, 619 F. Supp. 2d 1225, 1238 (M.D. Fla. 2008); *Nautica Int'l, Inc. v. Intermarine*

*USA, L.P.*, 5 F. Supp. 2d 1333, 1344-45 (S.D. Fla. 1998) (it was sufficient for the complaint to allege that the defendant interfered with relationships between the plaintiff and "foreign governments who intended to purchase [from the plaintiff]," without identifying the foreign governments); *KLS Martin, Inc. v. Medical Modeling, Inc.*, 2018 WL 8139133, at *8 (M.D. Fla. Dec. 17, 2018) (to state a claim for tortious interference, "no particular contract need be evidenced. A plaintiff must only show that 'an understanding between the parties would have been completed had the defendant not interfered.'") (quoting *Landry v. Hornstein*, 462 So. 2d 844, 846 (Fla. Dist. Ct. App. 1985)).  Accordingly, Defendant's argument on this point fails.

    3.   Sufficiency of the Allegations (Count IV)

    Defendant similarly argues that the Court should dismiss the fraud claim because the allegations supporting it are insufficient.  Doc. 31 at 24.  There is a different outcome for Plaintiff's fraud claim.

    The elements of common law fraud under Florida law are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) the consequent injury by the party acting in reliance on the representation." *Omnipol A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)); *see also Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007) (noting under Rule 9(b), a party alleging fraud must "state with particularly the circumstances constituting fraud" and a complaint must contain facts which establish (1) the precise statements, documents, or misrepresentations made, (2) the time and place of, and person responsible for the statement, (3) the content and

manner in which the statements misled the Plaintiff, and (4) what the Defendant gained by the alleged fraud).[11]

Here, Plaintiff claims that Defendant obtained Plaintiff's postal address and falsely represented that he was Plaintiff and had authorization to identify Plaintiff as the owner or publisher of the Website. Doc. 28 at 22. Plaintiff alleges that Defendant intended that third parties involved in the creation and publication of the Website and the public believed that Plaintiff created and published it. *Id*.

Defendant requests dismissal because Plaintiff fails to allege sufficient particularized facts to support a claim for fraud. Doc. 31 at 25. Particularly, Defendant contends that Plaintiff fails to allege that anyone relied on the information Defendant provided when he registered the Website or that there was a resulting injury for the registration. Doc. 31 at 26. Defendant states that even though Plaintiff claims an injury to himself, there is no allegation that he relied on Defendant's representations or acted in reliance on the information. *Id*. The Court agrees with Defendant.

Plaintiff does not spend much effort disputing Defendant's argument but does mention that "[w]hen it comes to the fourth element, however, a plaintiff need only demonstrate a causal link between the fraud alleged to have been perpetrated by the defendant and his injuries." Doc. 37 at 6, citing *Simon v. Celebration Co.*, 883 So.2d 826, 833 (Fla. 5th DCA 2004). Plaintiff's point is unclear. Regardless, Plaintiff does not allege that anyone—not even Plaintiff—suffered injury due

---

[11] In the Second Amended Complaint, Plaintiff cites to Florida Statutes sections 817.568 and 817.569 regarding the criminalization of using the personal information of another person without authorization and the knowing use of a public record in the commission of a misdemeanor. Doc. 28 at 20, 21. It is not clear from the pleading if Plaintiff claims that these statutes offer a private cause of action(s) or if they hold any other relevance. *See id*. Defendant, therefore, analyzes the claim under Florida common law fraud and in the Response, Plaintiff does the same. Docs. 31 at 25; 37 at 6.

to reliance on Defendant's misrepresentation regarding the registration of the Website.  *See* Doc. 28 at 22.  So, the Court is not convinced that there is an adequate "causal link."

As such, Count IV is due to be dismissed for failure to state a claim for fraud.  *See Dawley v. Nf Energy Corp. of Am.*, 2011 WL 13298730, at *3 (M.D. Fla. July 19, 2011) (finding that the plaintiff failed to state a claim for fraud as he did not allege that he suffered an injury as a result of acting in reliance on the representation); *Shaprio v. Unum Life Ins. Co. of Am.*, 2019 U.S. Dist. 102631, at *9 (S.D. Fla. June 18, 2019) ("Plaintiff's fraud claims fail because Plaintiff has not sufficiently alleged any false statement or omission by Defendants, and his reliance thereon."); *Conseco Ins. Co. v. Clark*, 2006 WL 2024401, at *3 (M.D. Fla. July 17, 2006) (granting a motion to dismiss on a Florida common law fraud claim because there was no allegation, in part, that the plaintiff relied on the correctness of the statements.); *Miller v. Morris Commun. Co.*, 2005 WL 8159674, at *15 (M.D. Fla. July 22, 2005) ("Without such inducement, there could be no reliance by Plaintiff on a false statement.  When neither are proven, no claim for fraud exists.").

### C.  Injunctive Relief

Defendant argues that the Court should dismiss Plaintiff's request for permanent injunctive relief because such an injunction would amount to an unconstitutional prior restraint.  Doc. 31 at 21-22.

Before considering Defendant's request, the Court notes three prefatory issues.  First, Plaintiff makes certain statements in the Response on this issue that are not necessarily reflected in his pleading.  Namely, Plaintiff states in the Response that injunctive relief is appropriate because of Defendant's "fraud."  *Id*.  But Plaintiff did not plead entitlement to injunctive relief for the fraud claim (Count IV), so it appears that Plaintiff's reference to "fraud" relates to the alleged defamation in Count II.  The Court will treat it as such because that is what is pled.

Second, Plaintiff states in the Response that an exception exists to enjoin speech even though temporary *and* permanent injunctive relief is not typically available with respect to defamatory conduct. *Id.* Plaintiff adds that the "request for temporary *and* permanent injunctive relief as set forth in Count II is proper." *Id* (emphasis added). Plaintiff also discusses in the Response the availability of *preliminary* injunctive relief with respect to false and defamatory statements. *Id.* A review of the Second Amended Complaint, however, does not include a claim for a temporary or preliminary injunction. Plaintiff cannot bring a claim for additional relief for the first time in the Response. *See Horowitz v. Pfizer Inc.*, 2021 WL 3679101, at *2 (M.D. Fla. Aug. 19, 2021) (finding that the court should limit the scope of review to the four corners of the complaint and not consider any new factual allegations or legal theories raised in responses to motions to dismiss as the plaintiff did not move to amend the pleading) (citing *George v. Pinellas Cnty.*, 285 F.3d 1334, 37 (11th Cir. 2002)). So, while the Court is not dismissing a request for a temporary or preliminary injunction, that is only because the Court finds that such a request does not exist in this case.

Third, even had it been pled, the Court is not inclined to issue a temporary or preliminary injunction as to the Website and its content when there has been no ruling or jury verdict on the defamation issue. *See Ward v. Triple Canopy, Inc.*, 2017 WL 3149431, at *5 (M.D. Fla. July 25, 2017) (granting a motion to dismiss to the extent the plaintiff sought a temporary restraining order or preliminary injunction because "there are no circumstances here to justify overriding the strong public interest against imposing a prior restraint to speech and issuing a temporary restraining order or preliminary injunction as to speech that has not yet been found defamatory").

Turning to the request for dismissal of the injunctive relief that Plaintiff did plead, Defendant claims that Plaintiff's request for a permanent injunction is an improper prior restraint of speech and publication. Doc. 31 at 21.

Typically, "[i]n the absence of some other independent ground for invoking equitable jurisdiction, equity will not enjoin either an actual or threatened defamation," and "a complainant is typically left to his or her remedy at law." *Weiss v. Weiss*, 5 So. 3d 758 (Fla. 5th DCA 2009) (citations omitted). "When a prior restraint takes the form of a court-issued injunction, the risk of infringing on speech protected under the First Amendment increases.") (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976)). Courts in this District have, however, "previously held that a narrowly tailored injunction prohibiting speech already found defamatory by the jury is not an invalid prior restraint when a judgment for monetary damages would not afford the plaintiff effective relief from a continuing pattern of defamation." *Ward*, 2017 WL 3149431, at *5 (citing *Saadi v. Maroun*, 2009 WL 3617788, at *1 (M.D. Fla. Nov. 2009); *see also Wentz v. Project Veritas*, 2018 WL 11252110, at *5 (M.D. Fla. Jan. 31, 2008) (allowing the plaintiff's claim for injunctive relief to go forward "[s]ince equity serves to enjoin defamation in certain instances that may be applicable to [the plaintiff's] case" and finding that at the motion to dismiss stage "an inquiry as to whether awarding [the plaintiff] a monetary award is appropriate and sufficient, as well as whether [the plaintiff] would be irreparably harmed if he is not granted injunctive relief, is premature.").

Here, Plaintiff claims in the Second Amended Complaint that he is seeking an injunction that prohibits Defendant from "creating or publishing any and all Statements about Plaintiff this Court adjudicates to be false and defamatory" and "orders Defendant to take all actions necessary to remove the Website and the Statements from the internet." Doc. 28 at 18-19. Plaintiff alleges

that there is no adequate remedy at law and Plaintiff has and will continue to suffer irreparable harm if Defendant is not required to remove the defamatory statement and Website.  Doc. 28 at 18.

Based on the foregoing, the Court finds that Plaintiff has pled the requisite elements for a permanent injunction and the request survives Defendant's request for dismissal under Rule 12(b)(6).  *See Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, 2009 WL 4890664, at *6 (S.D. Fla. Dec. 17, 2009) ("To obtain a permanent injunction under Florida law, a plaintiff must 'establish a clear legal right [to the relief requested], an inadequate remedy at law, and that irreparable harm will arise absent injunctive relief.'" (quoting *Liberty Counsel v. Fla. Bar Bd. of Governors*, 12 So.3d 183, 186 n.7 (Fla. 2009)).

## V.    Conclusion

Accordingly, Defendant's Motion to Dismiss (Doc. 31) is **GRANTED in part** to the extent that Plaintiff's fraud claim (Count IV) is hereby **DISMISSED**.  The remainder of the Motion (Doc. 31) is **DENIED**.

The **STAY** on discovery is **LIFTED**.

**ORDERED** and **ADJUDGED** in Orlando, Florida on August 7, 2023.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE