UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CRAIG K. DELIGDISH,**

       **Plaintiff,**

v.                                                                                 Case No: 6:23-cv-417-DCI

**DAVID BENDER,**

       **Defendant.**

## ORDER

This cause comes before the Court for consideration with oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **Plaintiff's Motion to Impose Sanctions Against Defendant for Spoliation of Evidence (Doc. 48)** |
| **FILED:** | **February 13, 2024** |
| | **THEREON** it is **ORDERED** that the motion is **DENIED**. |

Craig K. Deligdish (Plaintiff) initiated this action against David Bender (Defendant) in state court, and Defendant removed the action. Doc. 1. The parties consented to the jurisdiction of the undersigned as the presiding judge. Doc. 25. With leave of Court, Plaintiff filed a Second Amended Complaint; Plaintiff's defamation, tortious interference, and trade libel claims remain pending.[1] Before the Court is Plaintiff's Motion to Impose Sanctions Against Defendant for Spoliation of Evidence. Doc. 48 (the Motion). The Court conducted a hearing on the Motion, and, for the reasons stated at the hearing and herein, the Motion is due to be denied.

---

[1] By Order dated August 7, 2023, the Court dismissed Plaintiff's fraud claim. Doc. 40.

## I. Procedural History "

The Court entered a Case Management Scheduling Order and set March 1, 2024, as the discovery deadline. Doc. 44. On February 13, 2024, Plaintiff filed the Motion seeking sanctions because Plaintiff allegedly destroyed certain electronically stored information (collectively, **the ESI**, which falls into three categories and is more specifically defined and discussed *infra*). Doc. 48. Defendant filed a Response in Opposition (Doc. 67, the Response) along with supporting documentation (Docs. 68, 69), and Plaintiff's request for an evidentiary hearing followed. Doc 106. On June 14, 2024, the Court conducted a hearing to address case management issues, and the parties agreed to proceed with oral argument and supplemental briefing on the spoliation issue; neither party requested an evidentiary hearing, as both agreed that an evidentiary hearing on the Motion was unnecessary, though the Court offered both parties an opportunity to present evidence at such a hearing. *See* Docs. 125, 129. Plaintiff has since filed a Supplemental Brief in Support of the Motion (Doc. 135) and Defendant has filed a Response to Plaintiff's Supplemental Brief. Doc. 143. On July 23, 2024, the Court conducted another hearing and heard oral argument regarding the Motion. Defendant then filed a Notice of Clarification and a Notice of Filing Deposition. Docs. 150, 151. The Court has considered all those filings and argument, and the matter is now ripe for determination.

## II. Defendant's Deletion of the ESI

Plaintiff brings this action against Defendant based on an allegedly defamatory website—www.deligdishwatch.com (hereafter, **the Website**)—that Defendant published. Doc. 28. In the Motion, Plaintiff explains that upon learning of the Website he commenced an action in state court on July 14, 2022. Doc. 48 at 13. Initially, Plaintiff brought the action against "John Doe" because Plaintiff asserts that he did not know Defendant's identity. *Id*. at 2. Plaintiff claims to have

subsequently determined that Defendant owned the Website through a credit card receipt reflecting Defendant's name. *Id*. Plaintiff then "focused his non-party discovery on Defendant, Defendant's business partner, David Djajaputra ('Djajaputra') and Baltimore Partners, LLC, Defendant's business ('Baltimore Partners')." *Id*. at 2-3. Plaintiff issued subpoenas, and, on November 18, 2022, his lawyer engaged in a conversation with Defendant's lawyer. *Id*.; *see also* Doc. 67-2. In December 2022, Plaintiff's lawyer communicated with Defendant's lawyer concerning the production of documents responsive to the subpoenas, but Plaintiff received no documents in response to the subpoenas. Doc. 48 at 4; *see also* Doc. 67-2.

In the Response, Defendant states that in October 2022 he learned that Plaintiff issued subpoenas in a "John Doe" lawsuit filed against the creator of the Website. Doc. 67 at 4. There is some dispute as to the nature of the conversation between the parties' lawyers,[2] but Defendant admits that on December 1, 2022, Defendant's lawyer forwarded Defendant a letter from Plaintiff's lawyer "listing the information Plaintiff wanted from Defendant and with a request to preserve evidence." *Id*. at 5.

On December 27, 2022, Plaintiff filed an amended complaint in the state court case and replaced "John Doe" with Defendant as the named party. *Id*. On March 8, 2023, Defendant removed this action to this Court. *Id*. at 4-5.

Discovery ensued here. Ultimately, Defendant provided a supplemental response to Plaintiff's discovery requests. Plaintiff asserts that Defendant's supplemental response is missing

---

[2] Plaintiff contends that his lawyer communicated with Defendant's lawyer on November 18, 2022, and Defendant's lawyer acknowledged Defendant's receipt of a state court subpoena for documents related to the Website. Doc. 48 at 3. Defendant asserts that his lawyer did not acknowledge that Defendant had received the subpoena. Docs. 67 at 5. In the Supplemental Response, Defendant concedes that he was aware that the subpoena had issued but asserts that it was never served on him in the "John Doe" case. Doc. 143 at 8.

the ESI—that is, certain emails, text messages, and "other ESI." *Id*. at 5.  Plaintiff claims that

Defendant knew of the pendency of this action and, regardless, deleted the ESI. *Id*. at 9.  The ESI

at issue falls within three categories:

1. an email account with the username sorensen4456@gmail.com that Defendant used to create the Website (**the Gmail Account**);

2. protonmail account emails Defendant used to contact individuals and businesses in relation to the Website, including notifications on updates to the content of the Website (**the Protonmail Account**); and

3. text messages from Defendant, including those between Defendant and Parrish Medical Center's Chief Executive Officer, George Mikitarian (Mikitarian) relating at least in part to Plaintiff or the Website (**the Text Messages**).

Doc. 48 at 6-7 (collectively, **the ESI**).

It is Plaintiff's position that since the filing of the state case in July 2022, Defendant was fully aware of this action involving the Website and that Plaintiff sought from Defendant evidence to support Plaintiff's claims. *Id*.[3]  Plaintiff argues that he has been prejudiced by the deletion and spoliation of the ESI and that Defendant intended to deprive Plaintiff of the ESI as evidence in this action. *Id*. at 23.  As such, Plaintiff requests that the Court impose sanctions against Defendant by striking the pleadings or, in the alternative, the imposition of certain adverse inferences, together with an award of fees and costs. *Id*. at 30.

### a. Background Concerning the Gmail Account

Defendant contends that he created the Gmail Account to reduce junk and spam email. Doc. 67 at 2.  Defendant admits that he also used the Gmail Account to purchase and register both the Website's domain and an account to host the Website.  *Id*. at 3.  Defendant further admits that

---

[3] Plaintiff argued at the July 23, 2024, hearing that Defendant should have been aware of the anticipated litigation when he created the Website (because of the nature of the alleged defamation) or, at the latest, on October 19, 2022, when Plaintiff issued the initial state court subpoenas in this action.

he deactivated the Gmail Account, thereby deleting all email and other information contained in that account. Doc. 67 at 4; *see also* Doc. 143 at 8-9.[4] As for the reason for the deletion, Defendant contends that in July or August 2022 he logged in to the Gmail Account and saw that Plaintiff had sent him an email addressing him directly by name. Doc. 143 at 2. Defendant explains that since he only used this email for spam, he got "scared" and immediately requested that the account be deleted. *Id*. Defendant testified that at the time he requested the deletion he did not know of the "John Doe" lawsuit. Doc. 151-1 at 201, 222; *see also* Doc. 151-2 at 10. After learning of the lawsuit, Defendant asserts that he attempted, unsuccessfully, to recover the Gmail Account. Doc. 151-1 at 222.

### b. Background Concerning the Protonmail Account

Defendant represents that the Website went public on July 21, 2021, and, at the same time, he created the Protonmail Account for the purpose of sending emails about the Website. *Id*. Defendant states that he does not recall using the Protonmail Account to send any other emails.

---

[4] With respect to the Gmail Account, Defendant testified as follows:

> I deleted that account when -- it was either July or August -- I received a direct email to that account from Dr. Deligdish referring to me by name, and it freaked me out because I generally used this account for spam, and, you know, I wondered how -- I got scared that he was emailing me directly onto that account. And I was scared that this guy was trying to track me or something, so I immediately requested deletion at that point.

Doc. 151-1 at 203. While Defendant claims to have *requested* the deletion of the Gmail Account in July or August 2022, Plaintiff contends that it does not appear that the provider deleted it until November 2022, after Defendant saw the subpoena with his name on it. Doc. 135 at 3-4. Defendant admits that he does not know if he could have stopped the deletion of the Gmail Account between the time of the request and the time that it was actually deleted. Doc. 151-1 at 203 to 204.

*Id.*[5] Defendant states that he has post-traumatic stress disorder (PTSD) and obsessive-compulsive disorder (OCD) and contends that he "has long had a compulsion to delete texts or emails—whether sent or received—immediately after he sends or reads them." Doc. 143 at 7. Defendant admits that as of October 19, 2022, the Protonmail Account was still active (*see* Doc. 151-1 at 200) but asserts that "in January or February 2023, after enduring significant harassment from the Plaintiff, he succumbed to his OCD and PTSD and deleted the emails in the Protonmail.com account." Doc. 143 at 7.[6]

Defendant also states that on February 14, 2024, he attempted to recover the Protonmail Account by requesting technical assistance from protonmail.com but was informed that the update emails sent from that account concerning the Website were permanently deleted and not recoverable. Doc. 67 at 9. Nonetheless, Defendant adds that on February 23, 2024, the Protonmail Account "automatically created a contacts list as he sent emails in 2021, 2022, and 2023" and Defendant copied the contacts list and produced it to Plaintiff on February 25, 2024. *Id.*[7] As the Court understands it, that contact list identified all the email addresses to which Defendant sent the update emails about the Website from the Protonmail Account. Docs. 143 at 3; 151-1 at 186

---

[5] Defendant testified at his deposition that he only used the Protonmail Account to send out "blast" emails with Website updates. Doc. 151-1 at 116. At oral argument, Defendant's lawyer stated that Defendant did not receive responses from the "blast" email recipients. Defendant has since filed a declaration to specify that he received two responses to the very first "blast" email about the Website sent on or about July 21, 2021. Doc. 150 at 2. Defendant states that he did not reply to the emails and immediately deleted the responses. *Id.* Defendant's lawyer states that she did not learn of the responses until after the hearing. *Id.* at 3.

[6] Defendant states that his testimony along with his treating psychologist's testimony supports his contention that he did not act with the intent to deprive Plaintiff of evidence. *Id.* at 11.

[7] Defendant testified that he made no efforts to recover emails deleted from the Protonmail Account until January or February 2024. Doc. 151-1 at 220 to 221.

to 187, 195. However, Plaintiff contends that Defendant's deposition confirms that Defendant failed to provide the totality of that contact list—which includes more than 200 email addresses—until February 2024. Doc. 135 at 2-3. Prior to that time, Defendant had provided only a portion of the contact list in response to discovery requests. Docs. 67 at 8; 135 at 2; 151-1 at 193 to 195.[8]

### c. Background Concerning the Text Messages

In relation to the Text Messages, Defendant asserts that, in April 2022, he told Mikitarian via text message that he created the Website. *Id*. Defendant testified during his deposition that he deleted certain text messages and admits that they cannot be recovered. Doc. 151-1 at 215, 224. It appears that it is Defendant's position that he deleted the Text Messages due to his mental condition and that the deletion occurred after he received the December 1, 2022, letter providing him notice of this action. *Id*. at 207, 215, 222.[9] That said, Plaintiff utilized a public records request to North Brevard County Hospital District to recover many text messages. Specifically, on January 12, 2024, Plaintiff obtained from the hospital "hundreds of text messages" between Mikitarian and Defendant concerning the Website. Doc. 48 at 7. Plaintiff provides purported copies of the Text Messages (Doc. 48-10) and claims that they demonstrate that Defendant communicated "with third parties about the Website and about Plaintiff and they refer to other written communications Defendant had with third parties, such as Djajaputra." Doc. 48 at 25.

---

[8] Defendant states that on September 9, 2023, he produced the names of five people with whom he communicated about the Website, including Djajaputra. Doc. 67 at 8. Defendant states the list was "truthful" but did not include the master list of all the recipients. *Id*.

[9] Plaintiff represents that Defendant deleted the Text Messages because he was afraid of Plaintiff but does not cite to evidence in support of that proposition. *See* Doc. 135 at 8. It appears that Defendant's "fear" was the reason offered for the deletion of the Protonmail Account emails. *See* Doc. 151-1 at 208.

### III. Legal Standards

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x. 298, 301 (11th Cir. 2009). "Sanctions for spoliation of the evidence 'are intended to prevent unfair prejudice to litigants and to ensure the integrity of the discovery process.'" *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1323 (S.D. Fla. 2010) (quoting *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005)).

Federal Rule of Civil Procedure 37(e) governs claims of spoliation of electronically stored information (ESI). *Title Capital Mgmt., LLC v. Progress Residential, LLC*, Williams/Torres, 2017 WL 5953428, at *3 (S.D. Fla. Sept. 29, 2017); *Living Color Enterprises,, Inc. v. New Era Aquaculture, Ltd.*, 2016 WL 1105297, at *3, 4 n.2 (S.D. Fla. Mar. 22, 2016) ("[W]hen confronting a spoliation claim in an ESI case, a court must first look to newly amended Rule 37(e) and disregard prior spoliation case law based on 'inherent authority' which conflicts with the standards established in Rule 37(e)."). Rule 37(e) provides as follows:

> **Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> > (A) presume that the lost information was unfavorable to the party;
> >
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> >
> > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Therefore, "[p]ursuant to Rule 37(e), four threshold requirements must be met before a court may impose sanctions: (1) the information sought constitutes ESI; (2) the ESI should have been preserved in anticipation of litigation; (3) the ESI is lost because a party failed to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery." *Title Capital Management, LLC v. Progress Residential, LLC*, 2017 WL 5953428, at *3 (S.D. Fla. Sept. 28, 2017). (citations omitted). If these four threshold requirements are met, Rule 37 then provides the two different avenues to demonstrate that sanctions are appropriate: a showing of prejudice or intent to deprive. *Id*.

## IV. Discussion

Here, much ink is spilt by the parties (1) laying out the timeline of events to demonstrate Defendant's awareness of the litigation when he deleted the ESI, (2) discussing whether Plaintiff suffered prejudice through the deletion, and (3) considering whether Defendant acted with an intent to deprive Plaintiff of the use of the ESI in this action. But the Court finds that Plaintiff has failed to show that the ESI "cannot be restored or replaced through additional discovery." Fed.R.Civ.P. 37(e)(1). Thus, the request for spoliation sanctions fails.

The Eleventh Circuit recently explained that:

> By its text, Rule 37(e) creates a two-tiered sanctions regime—with lesser sanctions under Rule 37(e)(1) and more severe sanctions under Rule 37(e)(2). Both parts of the rule share two preconditions: (1) 'electronically stored information that should have been preserved in the anticipation or conduct of litigation' was 'lost because a party failed to take reasonable steps to preserve it' and (2) that information 'cannot be restored or replaced through additional discovery.'

*Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290 (11th Cir. 2023). Assuming that Plaintiff is correct that the ESI is "lost" because Defendant intentionally deleted it,[10] Plaintiff cannot satisfy the second precondition of Rule 37(e). "Because ESI 'often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere.'" *Doe v. Willis*, 2023 WL 2918507, at *8 (M.D. Fla. Apr. 12, 2023) (quoting Fed. R. Civ. P. 37, advisory committee notes to 2015 amendments). "Accordingly, 'Rule 37(e) precludes

---

[10] Even as to the first precondition, the Motion may be much ado about nothing. It must be remembered that the alleged conduct at issue in this case is defamation via the publishing of the Website, not defamation via any of the accounts at issue in the deleted ESI. And it is undisputed that Defendant owned and controlled the Website and utilized the ESI accounts in publishing and publicizing the Website. So, with respect to the first prong, even though Defendant admits that he deleted the ESI, the Court is not entirely convinced that relevant evidence—for example, any document relevant and responsive to a discovery request—was actually lost through that deletion.

First, Defendant testified that he did not save or backup any emails from the Gmail Account and made no effort because, in part, there were not many emails to preserve. Doc. 151-1 at 204. Defendant testified there was only one email in the account from Plaintiff and that he may have sent emails related to photography. *Id*. It appears undisputed that Defendant used the Gmail Account only for the creation of the Website and to filter spam. At the hearing, Plaintiff confirmed that he subpoenaed the host of the Website and received a response to that subpoena but did not receive in that production any emails from the Gmail Account regarding the Website's creation. And, indeed, there is nothing before the Court to suggest that the use of the Gmail Account to register the Website would have necessarily resulted in any emails from the Website host to the Gmail Account. While there could have been a confirmation email, there may not have been, and the Website host certainly did not produce any such communications when subpoenaed. Further, at least with respect to the Gmail Account, the Court questions whether Plaintiff had a duty to preserve that account at the time it was deleted. The Court is not aware of any authority that supports the proposition that electronic evidence must be preserved simply because it relates to conduct that might possibly spur a future lawsuit.

Second, as to the Text Messages, Plaintiff advised the Court at the hearing that, based on the date range of the production from the hospital, some of Defendant's text messages to Mikitarian may not be in Plaintiff's possession. But it remains unclear if there exist any other deleted or missing Text Messages—to Mikitarian or anyone else—that are relevant and responsive to a discovery request.

Third, that leaves the Protonmail Account. Plaintiff is in receipt of the list of recipients of emails from that account and has examples of the blast emails or updates sent from that account. *See* Docs. 48 at 6-7; 135 at 3.

any sanctions or curative measures if the ESI can be restored or replaced through additional discovery.'" *Id.* (quoting *Living Color Enters. Inc. v. New Era Aquaculture Ltd.*, 2016 WL 1105297, at *5 (S.D. Fla. Mar. 22, 2016)).

Here, upon learning of Defendant's actions—which the Court certainly does not condone—Plaintiff himself made a strategic decision to seek sanctions rather than discovery. Two wrongs don't make a right. The Court cannot countenance Plaintiff's litigation tactic here. Nor could the drafters of Rule 37(e) presumably, as the Rule itself precludes sanctions if the ESI can be restored or replaced through additional discovery.[11] And this is not a close call. The Court is not finding that a party may delete relevant evidence with impunity and then sit back and put the onus on its opponent to try and find the deleted evidence, hiding behind the restoration or

---

[11] The Committee Note to the 2015 amendment to Rule 37 that added subsection (e) explains that when it is determined that the ESI is lost, "Rule 37(e) directs that the ***initial focus*** should be on whether the lost information can be restored or replaced through additional discovery." (emphasis added). The Court notes that the issue, as phrased both in the Rule and the Note, is whether the ESI *can* be restored or replaced, not whether it is. The Court also notes that both the Rule and the Committee Note are written in the passive voice, such that the drafters did not identify a subject of the relevant sentences—there is no textual indication from the drafters whether the movant, the spoliator, or both have the obligation to conduct that additional discovery or the burden to establish whether such additional discovery can—or cannot—restore or replace the ESI at issue. However, the Committee Note goes on to explain that:

> Nothing in the rule limits the court's powers under Rules 16 and 26 to authorize additional discovery. Orders under Rule 26(b)(2)(B) regarding discovery from sources that would ordinarily be considered inaccessible or under Rule 26(c)(1)(B) on allocation of expenses may be pertinent to solving such problems. If the information is restored or replaced, no further measures should be taken. At the same time, it is important to emphasize that efforts to restore or replace lost information through discovery should be proportional to the apparent importance of the lost information to claims or defenses in the litigation. For example, substantial measures should not be employed to restore or replace information that is marginally relevant or duplicative.

Fed. R. Civ. P. 37 (Committee Note to 2015 Amendment). Here, Plaintiff took no action to have the Court issue an order to assist him in obtaining the additional discovery or otherwise utilize any of the procedures mentioned by the Committee Note.

replacement prerequisite in the rule.  What the Court *is* finding today, is that the party seeking the discovery must engage in *some* effort to restore or replace the deleted ESI prior to unlocking the sanctions in Rule 37(e).  Here, with one exception, Plaintiff made no attempt to use the discovery process to restore or replace the deleted ESI, instead choosing to seek sanctions and forgo further discovery even though time remained in the discovery period in this case.[12]

Indeed, that one exception proves the rule, in a sense.  The one time Plaintiff did conduct additional discovery to restore or replace deleted ESI, Plaintiff succeeded in replacing the lost ESI.[13]  Specifically, Plaintiff used a public records request to successfully obtain hundreds of text messages between Defendant and Mikitarian.  *See* Docs. 48 at 25; 48-10; 135-1 at 11.  On the other hand, as just a few examples, Defendant: took no efforts to depose or otherwise enforce a subpoena against Djajaputra for text messages; made no efforts to depose or subpoena persons or entities from the Protonmail Account contact list; and made no efforts to obtain from Defendant his toll records during the relevant time period to identify who he did text and, thus, what text messages, if any, might have been deleted.  Indeed, Plaintiff conducted only one deposition in this case, of Defendant.  Because Plaintiff took almost no action during the discovery process concerning the deleted ESI, the issues end up going hand-in-hand here—with no effort to attempt to use additional

---

[12] Not only did time remain during the discovery period to conduct discovery when Plaintiff filed the Motion, he knew about the alleged spoliation well before he did file the Motion.  And, further, Plaintiff never filed a motion seeking an extension of the discovery period.

[13] "If the information is restored or replaced, no further measures should be taken."  Fed. R. Civ. P. 37 (Committee Note to 2015 Amendment).

discovery to restore or replace the allegedly deleted ESI, there is nothing but speculation as to what, if anything, of relevance is lost.[14]

Based on the foregoing, the Motion is due to be denied. While Plaintiff primarily focuses on demonstrating to the Court that sanctions are appropriate because Plaintiff has suffered prejudice or because Defendant intended to deprive Plaintiff of the ESI, Plaintiff has not met Rule 37(e)'s threshold requirements. So, the Motion fails before the Court even reaches the Rule 37(e)(1) or (e)(2) arguments.[15] The Court reiterates that it is not attempting to set the bounds of a

---

[14] The Court understands that there is some authority to support Plaintiff's position that it should not be his burden to demonstrate that the ESI could not be restored or replaced, as Plaintiff was not the spoliator. *See Willis*, 2023 WL 2918507, at *8 ("[T]he Court is similarly concerned with requiring [the defendant] to shoulder the burden of demonstrating that the pertinent ESI on [the plaintiff's] iPhone 6s could not be restored or recovered."). The court in *Willis* acknowledged that some courts "expressed reservations" about placing the onus on the movant to show that the lost ESI could not be restored or replaced. *Id*. (citing *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839, 979 (N.D. Ill. 2021)). But, based on the circumstances of the instant case, the Court is inclined to follow the authority that stands for the proposition that at least some limited burden should remain with the movant to demonstrate that relief is appropriate under Rule 37(e). *See e.g.*, *Scarpati v. Fla. Highway Safety & Motor Vehicles*, 2021 WL 7501822, at *5 (M.D. Fla. Nov. 17, 2021) ("As the party seeking sanctions, and on the facts here, the [c]ourt finds that [the plaintiff] bears the burden of establishing prejudice.") (citing *Reed v. Royal Caribbean Cruises, Ltd.*, 2021 WL 515624, at *4 (S.D. Fla. Feb. 11, 2024) ("[P]ost-2015 [Rule 37] amendment, ESI cases. . . suggest the burden remains on the movant to establish the existence of spoliated evidence."); *Roberson v. USAA Cas. Ins. Co.*, 2016 WL 5864431, at *5 (M.D. Fla. Sept. 22, 2016) (placing burden on movant)*, report and recommendation adopted by*, 2016 WL 5846763 (M.D. Fla. Oct. 6, 2016)); *see also Kohn v. Camden Cnty. Sch. Dist.*, 2024 WL 1354573, at *7 (S.D. Ga. Mar. 28, 2024) (finding that the movant satisfied their initial burden under Rule 37 of demonstrating that the ESI could not be restored or replaced through additional discovery); *Sosa v. Carnival Corp.*, 2019 WL 330865, at *5 (S.D. Fla. Jan. 25, 2019) ("That's because the party seeking relief must also meet its burden of establishing the other [Rule 37] prerequisites (i.e., duty to preserve the ESI, the ESI cannot be restored or replaced through additional discovery, and a finding of prejudice to a party from loss of the ESI.")).

[15] With respect to intent, the Court noted at the July 23, 2024, hearing that it did not necessarily find persuasive Defendant's argument that he did not have the intent to deprive Plaintiff of the ESI because any spoliation was due to his compulsion to delete emails and texts because of his PTSD and OCD. The argument is not supported by the law or the facts (*e.g.*, Defendant did not delete all the emails from his iCloud account even though he "definitely deleted some" to avoid storage

movant's burden in this context. What the Court decides today is that the movant must do something more than what Plaintiff did here to unlock Rule 37(e) sanctions. There is some burden on the movant to try to restore or replace the deleted ESI prior to obtaining Rule 37(e) sanctions in a case like this (i.e. one in which the spoliation was known prior to the close of discovery and the spoliated ESI was reasonably available from third parties had additional discovery been sought).[16]

Finally, the Court provides an additional and alternative basis for denial of the Motion. Assuming *arguendo* that Plaintiff met Rule 37(e)'s preconditions and established that he was prejudiced pursuant to Rule 37(e)(1) or that Defendant acted with intent to deprive Plaintiff under Rule 37(e)(2), the Court still finds that Plaintiff is not entitled to the sanctions he actually requested. The Court has broad discretion to fashion an appropriate remedy for spoliation, determined on a case-by-case basis. *In re Boston Boat III, LLC*, 310 F.R.D. 510, 523 (S.D. Fla. 2015) (citations omitted). Sanctions may include, but are not limited to, default judgment, adverse

---

fees). Doc. 151-1 at 212. Even so, the Court does not reach the issue of intent and prejudice in this matter because Plaintiff has not satisfied his initial burden of demonstrating that there is lost ESI or that it could not be restored or replaced through additional discovery.

[16] In the context of determining prejudice under Rule 37(e)(1), the Committee Notes reflect the difficulty in establishing the burdens placed upon the parties in seeking and resisting Rule 37(e) sanctions:

> The rule does not place a burden of proving or disproving prejudice on one party or the other. Determining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair. In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Requiring the party seeking curative measures to prove prejudice may be reasonable in such situations. The rule leaves judges with discretion to determine how best to assess prejudice in particular cases.

Fed. R. Civ. P. 37 (Committee Note to 2015 Amendment).

inference or rebuttable presumption instructions to the jury, striking pleadings, and an award of fees and costs incurred by the injured party as a result of the spoliation. *Id*.

Here, Plaintiff requests that the Court strike the pleadings or impose an adverse inference due to the spoliation. Doc. 48. But it does not seem that any lost ESI is sufficiently related to the claims in this case to allow the Court to craft the requested remedy. Specifically, Plaintiff's Second Amended Complaint is not based on defamation via Defendant's emails or text messages—the deleted ESI at issue—but solely via Defendant's alleged publication of the Website. Plaintiff relies on *Ahrens Enters. v. Winning*, 2019 WL 12520080 (S.D. Fla. Apr. 18, 2019) to support the request for sanctions, yet that case highlights the Court's concern that the requested relief is too far afield of Plaintiff's claims. In *Ahrens*, the court passed on the drastic sanction of default judgment to remedy the prejudice and found that the more appropriate sanction against the defendant "to be certain adverse presumptions or inferences that can be *fairly drawn* from the absence of the ESI evidence that was lost or deleted by [the defendant]." *Id*. at *5 (emphasis added).[17]

Unlike *Ahrens*, the Court is not persuaded that imposition of the requested sanction based on missing emails and text messages would share the necessary relationship to Plaintiff's claims. This is especially true with respect to Plaintiff's request for an adverse inference. For example, if

---

[17] The Committee Note provides similar guidance, even in a case where the spoliator acted with an intent to destroy the ESI:

> Courts should exercise caution, however, in using the measures specified in (e)(2). Finding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision (e)(2). The remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss.

Fed. R. Civ. P. 37 (Committee Note to 2015 Amendment).

the Court fashioned an adverse inference as it relates to the Protonmail Account, the only reasonable inference would be that Defendant sent the same blast emails—the blast emails Plaintiff already has—to all the recipients on Defendant's list. Yet this is something that is arguably already undisputed in this case. And again, Plaintiff's claims are not based on Defendant's blast emails or text messages and, therefore, the Court is not convinced that any inference would be "fairly drawn." And though Plaintiff has asserted that the ESI might possibly contain evidence of actual malice or intent to harm, that assertion is pure speculation and, thus, not worthy of an adverse inference or other related sanction. In short, if Plaintiff could satisfy Rule 37(e)'s requirements to reach the imposition of a sanction for the spoliation, the Court is not convinced that Plaintiff's specific requests for relief make sense in this case.[18]

### V.   Conclusion

Based on the foregoing, Plaintiff's Motion (Doc. 48) is **DENIED**.

**ORDERED** in Orlando, Florida on August 23, 2024.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

---

[18] As a final note, the parties have agreed to a bench trial, so there is no jury to instruct on this matter. The Court is well-equipped to consider this issue for any relevant and admissible purpose during trial. For example, Plaintiff may, during the bench trial, raise the issue of spoliation and the underlying conduct at issue if appropriate. Further, Plaintiff may cross-examine Defendant on the deletion of the ESI, and Plaintiff may make any relevant argument concerning Defendant's allegedly intentional conduct related to the ESI.